# United States District Court
## Middle District of Georgia

FILED '22 DEC 09 PM02:17 MDGA-COL

JOHNNETRA MARSHALL,
      Plantiff,

Vs.

FEDEX GROUND INC.,
A foreign profit corporation doing business in Georgia,
BRYAN BROWOSKI,
JASON BUNTING,
      Defendants.

Case No.

### VERIFIED COMPLAINT AND DEMAND FOR JURY

NOW COMES JOHNNETRA MARSHALL for my Complaint against FEDEX GROUND, INC., a foreign profit corporation doing business in the State of Georgia, Bryan Browoski, Jason Bunting as follows:

## Count I
## Gender and Race Discrimination

1. I, Johnnetra Marshall, African American female was employed by the Defendant FedEx Ground, Inc. in Midland, State of Georgia
2. Defendant FedEx Ground Inc. is a large corporation doing business in the State of Georgia, in the city of Midland/Columbus.
3. I have been terminated by Defendant at the time of filing this lawsuit.
4. I worked for the Defendant for approximately 14 years.
5. Men and woman are treated differently at FedEx Ground and I was discriminated against based on my gender and race.
6. In May of 2019 a internal position was posted for only FedEx employees to apply for. I applied for the position due to me doing the duties of the job for years, the position was just given a title.
7. I was told by a contractor for FedEx that the senior manager, Bryan Browoski ( a white male) and Pickup and Delivery manager, Eladio Hernandez (a white male) reached out to a white male driver by the name of Jason Bunting working for Bonehead Trucking in Macon, Ga.
8. The managers for the defendant asked Jason to stop driving and consider working for FedEx Ground. They informed him of the position that was posted internally and told him how to apply.
9. Jason applied for the position due to the phone call from the managers because he had no way of having knowledge of the position since it was internal.
10. Jason Bunting and myself received a interview, however I was not selected for the position after years of experience and Jason, a white male had none (whom I trained on certain occasions after he received the position).
11. I was told by the managers Eladio and Bryan of the Defendant that I wasn't chosen for the position because they decided to go with another candidate.
12. I reported the Defendant to the Equal Employment Opportunity Commission and received a interview in October 2019.
13. The EEOC charged the defendant with discrimination

based off my race and sex.

14. The defendant tried to cover up their hiring of white males over African American females by hiring multiple African American female managers.
15. The defendant's attempt to cover up the discrimination by hiring multiple African American female managers occurred after I reported to the EEOC.
16. After reporting the defendant to the EEOC, I was removed from my office March/April 2020 by Bryan to accommodate Jason Bunting whom was given the office. I was placed in the back of the office without a desk or comfortable workspace. Shortly afterwards my workload increased and my schedule was changed after 9 years.
17. I suffered a miscarriage in August of 2021 and was ordered by my doctor to stay out of work. My manager Eladio called stating he would use sick pay since it's unlimited at the manager's discretion. After being out a week, Eladio called me stating that he would have to stop using sick pay and use my vacation pay. I had doctors notes so I asked why and he stated Bryan told him to use my vacation pay.
18. In September 2021 I became aware the senior manager Bryan for the defendant knew I reported him to EEOC.
19. I became aware of the Defendant's manager Bryan knowing of my reporting him after he had a meeting with another African American female manager Yolanda Alexander in September 2021.
20. The defendants manager Bryan said my name specifically in this one on one meeting with his manager Yolanda. He stated that Yolanda could call "Johnnetra" and vent because he's not a racist and he doesn't have anything against females running the company regardless of their skin color.
21. The manager Yolanda notified another manager at FedEx of the fact that Bryan raised my name out of nowhere in a attempt to defend against him discriminating or retaliating against me.
22. Once I became aware of it, I went to my manager Eladio and explained what happened and said that this isn't right.
23. Eladio said he was going to discuss this with Bryan and I told him I had nothing to say to him about it especially knowing he's aware and has a issue with me going to the EEOC. Eladio still told Bryan and Bryan ask to speak to me privately. I didn't go right away so Bryan came in the back

office and apologized in front of all management stating he was wrong.

24. I was treated differently by the defendant because of my gender and race in violation of Title 7, Civil Rights Act of 1964.
25. Fedex applied policy to African Americans employees but not to white employees. They violated their own policies when it came to white employees demonstrating discrimination based upon race.
26. Myself and Meinko discussed how Jason was allowed to have a white female manager Lacey stay in his office with the door closed off the clock. If she wasn't in his office, they were in the front of the building for hours talking ( I have photos).
27. Eladio previously told a black female manager Denise Moye that once she's off the clock to go home right afterwards.
28. The court has jurisdiction based upon my federal claims, and venue is proper with this court.
29. Defendant has an illegal pattern and practice of discriminating against female employees and African American employees.
30. Disparate treatment is evident from the facts plead herein as I, being a female employee and being African American was a motivating factor in the adverse employment actions taken against me.
31. Defendant claims they took adverse employment actions against me and terminated me for legitimate reasons.
32. Plaintiff here pleads both a traditional disparate treatment claim and a mixed motive claim. See, White v Baxter Healthcare Corp, 533 F3d 381 (CA 6 2008)
33. Defendant engaged in discriminatory practice with malice or with reckless indifference to my federally protected rights, as plead herein.
34. Because of the illegal conduct of the Defendant, I suffered emotional damages and wage loss.

## Count II
## Retaliation

35. I re-allege and incorporate Paragraphs 1 through 34.
36. The law holds, "Title VII's anti-retaliation provision prohibits any employer action that "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." Thompson v N Am Stainless,

LP, 131 S Ct 863, 868; 178 L Ed 2d 694 (2011), citation omitted.

37. The law holds that, "...punitive damages are warranted when the employer engages in conduct that carries with it a "perceived risk that its actions will violate federal law."" EEOC v Harbert-Yeargin, Inc, 266 F3d 498, 513 (CA 6 2001), citation omitted.

38. Defendant violated the State law in Georgia. Retaliation" means an act or omission intended to, or having the reasonably foreseeable effect of, punishing or otherwise impacting an individual for submitting (or assisting with submitting) a complaint or reporting discrimination or harassment, for participating in a discrimination or harassment investigation or proceeding, or for otherwise opposing discrimination or harassment." Ga. Comp. R. & Regs. 478-1-.03

39. On January 11, 2022 I was in a office discussing my manager Eladio telling a black female manager Denise Moye that once she's off the clock to go home afterwards with Meinko Jones, African American male manager.

40. Myself and Meinko discussed how Jason was allowed to have a white female manager Lacey stay here in his office with the door closed off the clock. If she wasn't in his office, they were in the front of the building for hours talking ( I have photos).

41. Myself and Jason's manager Eladio returned from the gym and sat in the office with us and listened to me and Meinko's conversation. He insisted he had to speak with Jason because this was getting out of hand.

42. Upon Eladio stating that he would have to address this with Jason, he stormed out of his office because he had listened to the entire conversation. Jason came straight for me in a threatening manner due to being angry speaking directly to me. I explained what I said and proceeded to exit the office but Jason blocked the door.

43. The State is also committed to maintaining a harassment-free workplace. Harassment as defined in this Rule is strictly prohibited. Such harassment violates an individual's fundamental rights and personal dignity and undermines the integrity of the workplace.
(a) The State's policy of maintaining a harassment-free workplace applies to everyone. The State will not permit any employee to be harassed in the course of their work by

supervisors, coworkers, or third parties, such as vendors or customers. Any employee who engages in prohibited harassment will be subject to prompt disciplinary action, up to and including termination of employment.

(b) Employees are expected to be aware of and to refrain from any conduct or behavior that could be construed as harassment. Examples of harassment include, but are not limited to:

1. threats, epithets, derogatory comments, slurs;

2. derogatory posters, photographs, cartoons, drawings, gestures; or

3. assault, unwanted touching, or blocking someone's movement." Ga. Comp. R. & Regs. 478-1-.03

44. Meinko had to get out his chair to remove Jason out the door due to me trying to exit and without him moving, Jason touched my abdomen.

45. I was walked to the back of the office by our manager Eladio as Meinko walked him to his office. The senior manager Bryan was in his office throughout the entire situation.

46. I left for the day and returned the following day going over the event that took place with Meinko who reiterated what happened the day before in his office. I was going to reach out to Human Resources after my shift but received a call after my shift saying I was suspended and being investigated for threatening Jason. This allegation was totally made up with no proof.

47. Days later I was told that Jason was still working and hadn't been suspended during the investigation.

48. On January 24, 2022 I was called by Eladio and Bryan on conference call stating I had been terminated. I proceeded to ask why I was terminated and I was told for threatening Jason, a adult white male. I stated to both managers that I never threatened him and asked where is it coming from because the cameras would prove I didn't threaten him. Bryan proudly stated it was an investigation and they decided to terminate me.

49. I reported to the EEOC and received a interview date in April 2022 involving the defendant FedEx Ground and involving the same 3 white males employees from my first charge in 2019.

50. I received my second charge of discrimination with EEOC

against the Defendant, involving the same white male employees on April 11, 2022 for retaliation, sex and race.
51. I was retaliated against by the defendant's managers Bryan and Eladio by suspension for being investigated and then terminated by the managers for threatening the same white male Jason Bunting he hired over me in 2019 without proving this occurred.
52. I had no disciplinary actions in my work record over a 14 year period.
53. I started getting my performance evaluations done differently after reporting to the EEOC. Instead of my manager Eladio calling me in the office to explain everything, he started asking me to log in and view it personally.
54. I received numerous awards and recognitions until manager Bryan came as senior manager.
55. Defendant's manager Bryan intentionally hired Jason by reaching out to him and telling him to apply. He also intentionally wanted me uncomfortable in the workplace after my filing with EEOC.
56. As a result of the defendant's legal actions as outlined and stated herein, I have been damaged greatly, in violation with the afore stated causes of actions, in that I have suffered from unemployment, emotional and economic harm, emotional injuries with pain and suffering, including but not limited to emotional distress and mental anguish, all of which I have suffered as a result of the treatment by the Defendant and expected to suffer for the rest of my life.
57. The wrongful and illegal actions of the defendant has damaged me, including unemployment and 401k loss, punitive damages and attorney fees.
58. I have been damaged well in excess of the amount of $50,000.00.
    a. WHEREFORE, I pray for judgement against Defendant, FedEx Ground, a profit corporation doing business in the State of Georgia, in an amount well in excess of the amount of $50,000.00 plus cost and interest, including 401k loss and other benefits, punitive damages and attorney fees for the illegal acts of Defendant stated herein, and all other damages afforded by law. I further request all other relief the Court deems appropriate in my favor as afforded by law.

The facts as stated within this Verified Complaint are true to the best of my knowledge, information and belief, and I will testify so in court.

_____
JOHNNETRA MARSHALL

Subscribed and sworn to before me this 9 day of December, 2022

Notary Public
_____

KEVIN KEEPFER
NOTARY PUBLIC
Muscogee County
State of Georgia
My Comm. Expires June 7, 2026

## JURY DEMAND

I, JOHNNETRA MARSHALL demand trial by jury in this matter.

Respectfully submitted,
Johnnetra Marshall